IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

TOMMY MARSHALL                                                                PLAINTIFF

v.                              CASE NO. 4:18-CV-00254 BSM

MWF CONSTRUCTION, LLC, and
MATT FOSTER                                                                   DEFENDANTS

## ORDER

Tommy Marshall's motion for partial summary judgment [Doc. No. 10] is granted.

### I. BACKGROUND

Marshall filed this lawsuit for violations of the overtime wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, *et seq*. The undisputed facts are as follows:

Defendants operate a construction company. Pl. F. ¶¶ 1–2, Doc. No. 11. Marshall was the "key guy" at one of defendants' work sites, which means that he was responsible for unlocking the site and keeping track of workers. *Id.* ¶¶ 7–8. At the site, he unlocked doors, ensured that subcontractors "were accounted for," and recorded the comings and goings of various individuals so that defendants could audit payment requests. *Id.* ¶¶ 12–14. Marshall was not in the business of being a "key guy." *Id.* ¶¶ 20–21. Rather, he merely performed this job for defendants on one particular site. *See id.*

Marshall worked for defendants from November 2017 through March 2018. *Id.* ¶ 5. Although the parties agree that Marshall's position did not have a specific end date when he was hired, they dispute whether Marshall was hired for an "indefinite" period. *Id.* ¶¶ 6, 34;

Def. Resp. Pl. F. ¶¶ 6, 34, Doc. No. 17.

Marshall's duties were fairly simple and the only "tools" he provided were paper and pens. *See* Pl. F. ¶¶ 9–11, 15–17. Further, while Marshall was considered important to defendants' business, he was not replaced when he left—others simply took over his responsibilities. Pl. F. ¶ 25; Def. Resp. Br. Ex. 2 at 17:18–18:6.

Marshall now moves for partial summary judgment as to whether he was defendants' "employee" or "independent contractor."

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.*

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). All reasonable inferences must be drawn in a light most favorable to the non-moving party, *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007), but a plaintiff's own self-serving, conclusory allegations

in an affidavit or deposition, standing alone, are insufficient to defeat summary judgment. *Haas v. Kelly Services*, 409 F.3d 1030, 1034 (8th Cir. 2005). Finally, the evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

## III. DISCUSSION

For the FLSA's wage and overtime provisions to apply, Marshall must establish that he was defendants' employee. *Krupicki v. Eagle One, Inc.*, No. 4:12-CV-00150 KGB, 2014 WL 12710353, at *3 (E.D. Ark. April 3, 2014). Whether Marshall was an employee or an independent contractor "depends on the 'economic reality' of his relationship with defendants." *Id.* (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). This is a question of law, *Roslov v. DirecTV Inc.*, 218 F. Supp. 3d 965, 972 (E.D. Ark. 2016) (citations omitted), and Marshall has the burden of proving that he was an employee. *See Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1360 (8th Cir. 1993).

Six factors are often considered when making this determination: (1) the extent of defendants' control over Marshall; (2) Marshall's investment in his own business; (3) the extent to whether Marshall's profit or loss was determined by defendants; (4) the skill and initiative in performing the job; (5) the permanency of the relationship; and (6) the extent to which the work was integral to defendants' operations. *See Roslov*, 218 F. Supp. 3d at 972 (citing *Krupicki*, 2014 WL 12710353, at *3). No single factor is dispositive, and the totality of the circumstances must be considered. *See Krupicki*, 2014 WL 12710353, at *3 (quoting

3

*United States v. Silk*, 331 U.S. 704, 716 (1947)).

    A.    <u>Control and Profit or Loss</u>

The first and third factors weigh weakly in favor of employee status. It is undisputed that, beyond being told when to arrive in the mornings, Marshall could set his own hours each week. This also meant that he could make more money by choosing to work more hours, and he was free to come and go from the site and faced no adverse consequences for being absent.

It is worth noting that, without further explanation, these facts are slightly confusing—it stands to reason that Marshall would need to be physically present to track the comings and goings of people on the site. If it was true that Marshall could set his own hours and leave the site at will, it is unclear who, if anyone, filled in for him during the times he was not present.

Nevertheless, these facts are assumed to be true and tend to support defendants' position that Marshall was an independent contractor. *See Herman v. Express Sixty-Minutes Delivery Service, Inc.*, 161 F.3d 299, 303 (5th Cir. 1998) (holding that drivers who set their own hours and days of work and who could reject work without retaliation were not under employer's control); *Roslov*, 218 F. Supp. 3d at 976 (noting that "[o]f particular importance here is whether [plaintiff] was 'free to set his own schedule and take vacations when he wished'") (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 171 (2d Cir. 1998)).

At the same time, Marshall had no real independence beyond flexibility in choosing

4

his hours (except for when to report in the mornings) and deciding whether he wanted to remain on site during the day. *See Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) ("Under our economic-realities approach, '[c]ontrol is only significant when it shows an individual exerts such a control over a meaningful part of the business that she stands as a separate economic entity.") (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1049 (5th Cir.1987)). His tasks were very simple and routine, and the fact that he was not directly supervised by defendants when he completed them "cannot be bootstrapped into an appearance of real independence." *Id.* (quoting *Mr. W Fireworks, Inc.*, 814 F.2d at 1049). Indeed, Marshall had no control over any meaningful aspects of the business. *C.f. Krupicki*, 2014 WL 12710353, at *4–5. Further, Marshall was told when to report to work in the mornings, so even if he had flexibility in choosing his hours, defendants also had some control over his hours.

Finally, while Marshall could earn more money if he elected to work more hours, he was paid hourly, and it seems that his pay could not increase based on any other factor. *C.f. Hopkins*, 545 F.3d at 344–45. Marshall was also not "in the business" of being a "key guy," and this was simply a job he performed for defendants at a particular work site.

B.  Investment

The second factor weighs in favor of employee status because Marshall made very minor investments in his labor and equipment. Beyond paying for his personal transportation to work and his cell phone, which are relatively minor and common expenses incurred by

5

most workers, he paid only for paper and pens. This is insignificant when compared to defendants' likely expenditures at a construction site. *See id.* at 344 (comparing worker's individual investment to that of the alleged employer); *see also Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998) (same).

C. Skill

The fourth factor weighs in favor of employee status because it is undisputed that Marshall's position did not require special skills because his tasks were simple. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1295 (3rd Cir. 1991) ("Routine work which requires industry and efficiency is not indicative of independence and nonemployee status.") (quoting *Usery v. Pilgrim Equipment Co., Inc.*, 527 F.2d 1308, 1314 (5th Cir. 1976)); *see also Krupicki*, 2014 WL 12710353, at *6–7. Marshall's tasks were so routine and basic that they did not require him to exercise the "initiative, judgment or foresight of the typical independent contractor." *Donovan v. Brandel*, 736 F.2d 1114, 1118 n.7 (6th Cir. 1984) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)).

D. Permanency

The fifth factor weighs in favor of independent contractor status. *See Thompson v. Linda & A., Inc.*, 779 F. Supp. 2d 139, 151 (D.D.C. 2011) ("The more permanent the relationship, the more likely it is that a court will find a worker to be an employee.").

The parties dispute whether Marshall was hired "indefinitely," but they agree that when he was hired, there was no specific end date for his position. It is, however, undisputed

that Marshall only worked for defendants for a few months and that he left by simply walking away from the job. In drawing all reasonable inferences in favor of defendants, these facts seem inconsistent with an individual who had an expectancy of a long-term working relationship with defendants.

E. Importance

The sixth factor weighs in favor of independent contractor status because Marshall's work was not essential to defendants' operations. Although the parties agree that Marshall's work was "important" or "essential," it does not make sense to rely on this characterization. Indeed, a company is unlikely to ever hire someone it considers "unimportant" or "unnecessary" to the business. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 73 (2d Cir. 2003) ("[T]his factor could be said to be implicated in every subcontracting relationship, because all subcontractors perform a function that a general contractor deems "integral" to a product or a service."). Rather, Marshall was relatively non-essential in that he was completing simple tasks that were incidental to defendants' primary work, his tasks were relatively simple and routine, and others were able to complete them in his absence. *See Donovan v. DialAmerica Marketing, Inc.*, 757 F.2d 1376, 1385 (3rd Cir. 1985) ("[W]orkers are more likely to be 'employees' under the FLSA if they perform the primary work of the alleged employer.").

IV. CONCLUSION

Having weighed all of these factors, Marshall's motion for partial summary judgment

7

[Doc. No. 10] is granted because he has established, as a matter of law, that he was defendants' employee.

IT IS SO ORDERED this 29th day of March 2019.

_____
UNITED STATES DISTRICT JUDGE